1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RANDALL CASHATT, BRANDON KENDALL, DAVID HODEL, CHAD PRENTICE, BETH JOSWICK, JEFFREY HEATH, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

FORD MOTOR COMPANY,

Defendant.

Honorable Judge Ronald E. Leighton

No. 3:19-cv-05886-MLP

PLAINTIFFS' FIRST AMENDED COMPLAINT CLASS ACTION

Jury DEMANDED

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................1

II.     JURISDICTION AND VENUE ................................................5

III.    PARTIES ........................................................................6

1.      Plaintiffs .....................................................................6

2.      Defendant ....................................................................7

IV.     FACTUAL ALLEGATIONS...................................................8

PLAINTIFFS' FIRST AMENDED COMPLAINT  - 1
Case No. 3:19-cv-05886

A.      The Class Vehicles ...........................................................................8

B.      The Exhaust Fume Defect...............................................................9

C.      Defendant's Knowledge of the Defect and Associated

Safety Hazard ...............................................................................................11

1.      NHTSA Complaints & Investigation ............................................13

2.      Technical Service Bulletins ..........................................................21

3.      Prior Class Litigation ...................................................................24

V.      TOLLING OF THE STATUE OF LIMITATIONS AND ESTOPPEL ...24

VI.     CLASS ACTION ALLEGATIONS ................................................25

VII.    CLAIMS FOR RELIEF ..............................................................30

VIII. PRAYER FOR RELIEF ..............................................................34

IX.     DEMAND FOR JURY TRIAL .....................................................36

I    The allegations herein are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel.[1]

## I.    INTRODUCTION

1.    Plaintiffs  bring this class action against Ford Motor Company ("Ford" or "Defendant"), individually and on behalf of all persons or entities in Washington State who were law enforcement officers that operated    a Class Vehicle (defined below), for Defendant's violation of Washington state's product liability statute fraud,  concerning  a known defect in thousands of vehicles sold in the United states for Use in Washington State.by law enforcement personnel.

2.    The affected vehicles are 2011-2018 model year Ford Explorers (the "Class Vehicles").

3.    The Class Vehicles include a defective exhaust and/or Heating, Ventilation,  and  Air Conditioning  system  (the  "HVAC  System")  that  allows exhaust odor and gases, including carbon monoxide – an odorless, toxic gas, to enter the passenger compartment of the vehicles while in use.

---

[1]    Counsel's investigation includes an analysis of publicly available information, including consumer complaints to the National Highway Transportation Safety Administration, Technical Service Bulletins issued by Defendant, and additional analysis.  Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

PLAINTIFFS' FIRST AMENDED COMPLAINT  - 3
Case No. 3:19-cv-05886

4. This hazardous defect has resulted in numerous complaints to the National Highway Transportation Safety Administration ("NHTSA") and the opening of a NHTSA investigation into the Class Vehicles.   [Ford has recently issued an emission recall notice (19E02) for all Ford Interceptor SUV's built from 2011- to 2018.]

5. The defect is not new to Ford.   As early as 2012, Defendant had issued Technical Service Bulletins ("TSBs") to its exclusive network of dealers, recognizing the presence of exhaust odors and fumes in the passenger compartment of certain Ford Explorers. Further, in late 2016, Ford settled a class action litigation that alleged that model year 2011-2015 Ford Explorers similarly permitted exhaust and other gases to enter the passenger compartment. (https://www.usatoday.com/story/money/cars/2018/01/25/feds-probing-ford-explorer-suv-after-owners-say-its-making-them-sick/1063536001/ (last visited Aug. 7, 2019).

6.  The defect exposes Plaintiffs and potential Class members to noxious gases, such as carbon monoxide, when the vehicles are in use and creates a clear safety hazard.  For example, complaints to NHTSA report that the presence of exhaust fumes  in  the  Class Vehicles  cause  headaches  and  dizziness  on  the  part  of occupants, which can lead to accidents.

7. NHTSA's investigation summary reports:

… three crash events and 25 injury incidents citing a total of 41 injuries.  The  alleged injuries, as affirmatively indicated on  the [Vehicle Owner Questionnaire] reports, range from unspecified to loss of consciousness, with the majority indicating nausea, headaches, or light headedness. One police incident alleged a crash with related injuries,

and a second police incident reported a physiological injury allegedly from carbon monoxide (CO) exposure. Another reported police incident resulted in a rollover crash event with injuries.

8.      Despite the TSBs, the class action settlement and the complaints to NHTSA and the NHTSA investigation into the Class Vehicles, Defendant knowingly, actively, and affirmatively omitted and/or concealed the existence of the defect to increase profits by selling additional Class Vehicles.  Knowledge and information regarding the defect and the associated safety hazard was in the exclusive and superior possession of Defendant and its dealers, and was not provided to Plaintiffs and members of the Class, who could not reasonably discover the defect through due diligence.  Based on pre-production testing, design failure mode analysis, and consumer complaints to dealers and NHTSA, inter alia, Defendant was aware of the defect in the Class Vehicles and fraudulently concealed the defect from Plaintiffs and members of the Class.

9.      Notwithstanding this knowledge, Ford continued selling defective vehicles, has failed to disclose the existence of the defect to Plaintiffs and members of the Class, has not issued a recall, and has not remedied the issue and/or compensated Plaintiffs for the material defect. Rather, Defendant wrongfully and intentionally concealed the defect from Plaintiffs and members of the potential Class.

10.     No reasonable class member expects to operate a vehicle that contains a concealed defect that allows toxic gases, such as carbon monoxide, into the passenger compartment when in use. The defect is material to Plaintiffs and members of the potential Class because

PLAINTIFFS' FIRST AMENDED COMPLAINT  - 5
Case No. 3:19-cv-05886

when they were assigned their respective vehicles to drive, they reasonably relied on the reasonable expectation that the Class Vehicles' would be free from defects and would not allow exhaust fumes into the vehicle.   Had Defendant disclosed the defect, Plaintiffs and members of the Class would not have operated the vehicles.

11.    Plaintiffs and the Class (defined below) assert claims against Defendant for fraudulent concealment and violation of Washington State Products Liability Statute.

12.   As a direct result of Defendant's conduct, Plaintiffs and Class members have been harmed and are entitled to actual damages, compensatory, statutory and punitive damages, attorneys' fees, costs, restitution, and injunctive and declaratory relief.

## II.    JURISDICTION AND VENUE

13.    This Court has jurisdiction over this action as the acts occurred in the State of Washington; Ford is a Corporation with its headquarters in Delaware and Michigan, therefore there is diversity of citizenship and the amount in controversy exceeds $75,000.00.

## III.    PARTIES

14.    Plaintiffs:    Plaintiffs are all Washington State Patrol Troopers who were issued the Ford Explorer Interceptors as their regular patrol vehicles. Potential class members are law enforcements officers in Washington State who are/were required to operate the Ford Explorer vehicles as part of their work assignments.

PLAINTIFFS' FIRST AMENDED COMPLAINT  - 6
Case No. 3:19-cv-05886

15.    Soon after receiving their assigned vehicles, Plaintiffs detected exhaust fumes within the passenger compartment while driving.  Plaintiffs thereafter presented their patrol vehicles to  authorized Ford dealerships in order to address the problem.  The dealers were without sufficient information from FORD to repair the vehicles.

16.    Plaintiffs  were advised that the vehicles were safe to drive and that there were no problems which would cause them any hazard.  Plaintiffs  detected exhaust fumes within the passenger compartment of their vehicles while driving, and Plaintiffs have suffered headaches, nausea, foggy thinking, and flu like symptoms.  For Trooper Cashatt, he suffered permanent neurological damage which has prevented him from continuing his job as a Washington State Patrol Trooper.  The exposure to chronic carbon monoxide leaks existed from the time that the vehicles were put into use until present day.

17.    Defendant: Defendant Ford Motor Company is a Delaware corporation, with its corporate headquarters located in Dearborn, Michigan.

18.    Ford designs, engineers, manufactures, markets and/or sells vehicles throughout the United States, through its network of authorized motor vehicle dealers. Ford  engages  in interstate  commerce  by  selling  vehicles  through  its authorized dealers located in every state of the United States, including within this  State.

19.    At all times relevant to this action, Defendant and/or its agents manufactured, distributed, sold, leased, and warranted the Class Vehicles, containing the defect described herein, throughout the United States including Washington State.    Defendant developed and

disseminated the owner's manuals and warranty booklets, advertisements and other promotional materials relating to the Class Vehicles.

20.    On information and belief, at all times relevant to this action, Defendant made decisions related to advertisement, marketing, sales, warranties, and recalls of the Class Vehicles its Dearborn, Michigan headquarters.

### IV.    FACTUAL ALLEGATIONS A.    The Class Vehicles

20.    The Class Vehicles – model year 2011-2018 Ford Explorers – are a part of Ford's fifth generation of Explorer vehicles.

21.    The model year 2011-2018 Ford Explorers include some upgrades and changes from the prior year model, however upon information and belief, none of those changes addressed and/or remedied the defect, which allowed exhaust fumes into the passenger compartment while in use and which was present in the 2011-2018 Ford Explorers.

22.    The Exhaust Fume Defect: The Class Vehicles were designed, engineered and manufactured by Ford with design flaws and/or defective exhaust and/or HVAC Systems that cause the presence of exhaust fumes, including carbon monoxide, in the passenger compartment while the vehicles are in use (the "Exhaust Fume Defect").  By designing, manufacturing, assembling, inspecting, distributing, selling and leasing the  Class Vehicles with the Exhaust Fume Defect, Ford rendered the Class Vehicles defective and unsafe for their intended use and purpose.

23.    Upon information and belief, the Exhaust Fume Defect was caused, among other things, by Defendant's design, manufacture or assembly of the Class Vehicles':

•    bumper and/or tailpipes;

•    rear air extractors;

•    drain valves in the liftgates;

•    sheet metal panels and overlaps;

•    joints and seems; and

•    rear auxiliary air conditioning system

24.    Upon information and belief, Defendant's design, manufacture or assembly of these components, among other things, allows exhaust fumes, including carbon monoxide, to enter and accumulate in the passenger compartment.

25.    According to the Centers for Disease Control and Prevention, carbon monoxide (CO) is "an odorless, colorless gas that can kill you." (Carbon Monoxide Poisoning, Centers for Disease Control and Prevention, https://www.cdc.gov/co/faqs.htm (last visited Aug. 7, 2019) ("Carbon Monoxide Frequently Asked Questions").

26.    "CO is found in fumes produced any time you burn fuel in cars or trucks, small engines, stoves, lanterns, grills, fireplaces, gas ranges, or furnaces. CO can build up indoors and poison people and animals who breathe it.… The most common symptoms of CO

PLAINTIFFS' FIRST AMENDED COMPLAINT  - 9
Case No. 3:19-cv-05886

poisoning are headache, dizziness, weakness, upset stomach, vomiting, chest pain, and confusion."

27    As recognized by NHTSA, consumer complaints regarding the Class Vehicles have been consistent with typical carbon monoxide symptoms, i.e., headaches, nausea and dizziness.

28.    Upon information and belief, aside from carbon monoxide, the exhaust fumes present in the passenger compartment of the Class Vehicles as a result of the Exhaust Fume Defect, may contain sulfur dioxide, nitrogen oxides, formaldehyde, benzene and soot, which also present safety hazards for Plaintiffs and the Class.

29    As alleged herein, Plaintiffs and members of the Class unknowingly consumers who are assigned patrol vehicles which they are required to operate daily that contain the Exhaust Fume Defect and suffered damages related to their use of the Ford Explorer Interceptors as a direct result of Defendant's omissions regarding the standard, quality or grade of the Class Vehicles and/or the existence of the Exhaust Fume Defect and its associated safety risks. The fact that the Class Vehicles suffer from the Exhaust Fume Defect is material to Plaintiffs and members of the Class because it exposes drivers and passengers of the Class Vehicles to a safety hazard.

30.    As a result of Defendant's material omissions, including its failure to disclose the presence of the Exhaust Fume Defect in the Class Vehicles, and falsely representing that the exhaust fume leak was caused by the police departments' modifications of patrol

PLAINTIFFS' FIRST AMENDED COMPLAINT  - 10
Case No. 3:19-cv-05886

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

vehicles, Defendant has caused Plaintiffs and members of the Class to suffer actual damages, including but not limited to injury, sickness and neurological damage by their exposure to exhaust fumes, including carbon monoxide.

31.    Ford has known since at least 2012 of the presence of exhaust fumes in the passenger compartment of certain Ford Explorer models.

32.    Ford's knowledge and information regarding the Exhaust Fume Defect were in the exclusive and superior possession of Ford and its dealers, and that information was not provided to Plaintiffs and members of the Class. Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Defendant's network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, consumer complaints to dealers and NHTSA, and testing performed in response to consumer complaints, inter alia, Defendant was aware (or should have been aware) of the Exhaust Fume Defect in the Class Vehicles and fraudulently concealed the defect and safety hazard from Plaintiffs and members of the Class.

33.   Defendant fraudulently, intentionally, negligently and/or recklessly omitted and concealed from Plaintiffs and members of the Class the defect in the Class Vehicles even though Defendant knew or should have known of design and/or manufacturing defects in Class Vehicles.

34.     Defendant knew, or should have known, that the Exhaust Fume Defect and associated safety risk were material to owners and lessees of the Class Vehicles and were not known or reasonably discoverable by Plaintiffs and members of the Class before they purchased or leased Class Vehicles, or before the warranties on their Class Vehicles expired.

35.    Notwithstanding Defendant's exclusive and superior knowledge of the Exhaust Fume Defect, Defendant failed to disclose the defect to Plaintiffs and class members at the time of the patrol vehicles being put into use (or any time thereafter) and continued to sell Class Vehicles to the various police Departments.  Defendant intentionally concealed the Exhaust Fume Defect and associated safety hazard, failed to provide any notice of the defect and associated safety hazard to Plaintiffs and members of the Class, and have failed to recall the vehicles to remedy the defect.

36    Consumers who drove, purchased or leased Class Vehicles have filed numerous complaints with NHTSA, reporting and detailing the Exhaust Fume Defect.

37.    State and Federal law requires Ford to monitor defects which can cause a safety issue and report them within five (5) days.[CFR 573.6]  Ford regularly monitors NHTSA complaints in order to meet its reporting requirements under federal law and was provided knowledge of the defect through these complaints, inter alia.

38.    Below is a sample of consumer complaints made to NHTSA:

2016 FORD EXPLORER NHTSA ID Number: 11011850

Incident Date August 25, 2016

Consumer Location KINGSTON, PA

I FELL ASLEEP FROM CARBON MONOXIDE POISONING AND I HIT THREE OTHER CARS CAUSING ME TO TOTAL MY VEHICLE. WEEKS BEFORE I HAD THE ACCIDENT I WAS EXPERIENCING DROWSINESS AND HEADACHES. I HAD THIS VEHICLE LESS THAN TWO MONTHS.

NHTSA ID Number: 11011757

Incident Date August 1, 2016

Consumer Location MARSHFIELD, MO

EXHAUST SMELL IN CABIN UPON HARD ACCELERATION OR HILL CLIMBING. PROBLEM OCCURS ANY TIME RPMS EXCEED 3000-3500 FOR

MORE THAN A FEW SECONDS. WIDE OPEN THROTTLE IS NOT REQUIRED, JUST MODERATE ENGINE STRAIN IN NORMAL DRIVING CONDITIONS. EXHAUST SMELL SEEMS TO COME THROUGH A/C VENTS AND IS WORSE WITH SYSTEM ON RECIRCULATE, BUT IS DEFINITELY PRESENT WHEN SYSTEM IS SET TO FRESH AIR AS WELL.

REAR A/C SYSTEM DOES NOT HAVE TO BE ON IN ORDER TO GET THE SMELL. EXHAUST SMELL IS BAD ENOUGH TO BURN YOUR THROAT IF

NOT VENTED BY ROLLING DOWN WINDOWS QUICKLY. PERSONS IN BACK SEAT COMMONLY COMPLAIN OF HEADACHES WHEN RIDING IN THE VEHICLE. VEHICLE HAS BEEN TO THE DEALER A TOTAL OF 5

TIMES FOR REPAIRS. NONE HAVE CORRECTED THE ISSUE. TSBS 14-

0130 HAS BEEN PERFORMED, MUFFLERS HAVE BEEN REPLACED, HVAC MODULE HAS BEEN UPDATED, BUT PROBLEM STILL PERSISTS

AS BAD OR WORSE THAN EVER. VEHICLE WAS PURCHASED BRAND

NEW. PROBLEM BEGAN AROUND 1,500 MILES. THERE HAVE BEEN NO AFTER-MARKET MODIFICATIONS TO THE VEHICLE.

 NHTSA ID Number: 11011538

PLAINTIFFS' FIRST AMENDED COMPLAINT  - 13
Case No. 3:19-cv-05886

Incident Date June 1, 2016

Consumer Location SANTA ANA, CA

I BELIEVE C0 IS LEAKING INTO MY CAR AND WHILE DRIVING I HAVE BECOME DIZZY AND GET HEADACHES ON A REGULAR BASIS. I ALSO BECOME QUITE TIRED. I DRIVE FOR A LIVING AND DID NOT UNDERSTAND WHAT WAS HAPPENING. THIS USUALLY HAPPENS WHILE DRIVING ON THE HIGHWAY WITH MY WINDOWS CLOSED. I NEVER DRIVE WITH MY WINDOWS OPEN BUT NEED TO OPEN THEM TO GET RID OF THE DIZZY AND TIRED FEELING.

NHTSA ID Number: 11011420

Incident Date July 29, 2017

Consumer Location PIKEVILLE, NC

WHILE ACCELERATING A WEIRD SMELL FILLS THE CABIN OF MY EXPLORER. OTHER PEOPLE SMELL IT AS WELL NOT JUST ME. SOMETIMES AFTER DRIVING FOR MORE THAN 30 MINUTES I GET A HEADACHE OR I AM DIZZY.

NHTSA ID Number: 11010426

Incident Date April 20, 2017

Consumer Location CHESHIRE, CT

THE CAR PRODUCES A ROTTEN EGG SULFUR SMELL IN THE PASSENGER CABIN WHILE ACCELERATING THE ENGINE UNDER

MODERATE TO HEAVY LOAD. THE FUMES ARE DANGEROUS AND YOU HAVE TO OPEN ALL THE WINDOWS TO VENT THE SMELL FROM THE PASSENGER CABIN OR I BECOME DIZZY AND LIGHTHEADED FROM THE FUMES. THERE IS DEFINITELY AN EXHAUST LEAK THAT IS COMING INTO THE PASSENGER CABIN WHEN THE CAR ACCELERATES UNDER LOAD.

NHTSA ID Number: 11000679

Incident Date July 15, 2016

Consumer Location HUTTO, TX

I HAVE BEEN TAKING THIS VEHICLE INTO THE DEALERSHIP MANY TIMES SINCE JULY 2016 FOR AN EXHAUST SMELL IN THE CABIN WHEN ACCELERATING AND AT HIGH SPEEDS AND CONSTANTLY FEEL DIZZY AND NAUSEOUS WHEN DRIVING THE VEHICLE. I HAVE TRIED MULTIPLE DEALERSHIPS TO FIX AND THEY HAVE TRIED ALL THE TSB'S THAT APPLY TO THE 2011-15'S, BUT SEEM TO NOT WORK ON THE 2016. THEY HAVE RESEALED THE VEHICLE AT LEAST 3 TIMES, REPLACED THE EXHAUST SYSTEM, AND OTHER PARTS, AND WHO KNOWS WHAT ELSE THEY'VE TRIED, BUT STILL WITH NO RESOLUTION. I'M TAKING IT BACK TO THE DEALERSHIP YET AGAIN TOMORROW, BUT REFUSE TO TAKE THIS VEHICLE BACK HOME UNTIL THE SMELL IS COMPLETELY GONE, WHICH SEEMS TO BE AN IMPOSSIBLE FEAT AT THIS POINT. I HAVE A CASE OPEN WITH FORD, BUT HAVE NOT NOT MADE ANY PROGRESS WITH THEM EITHER (OVER 6 WEEKS). PLEASE DO WHAT YOU CAN TO GET THEM TO MAKE A RECALL ASAP BEFORE I BECOME ONE OF THOSE SOCCER MOMS THAT PASSES OUT BEHIND THE WHEEL WITH HER KIDS AND DOGS INTHE CAR AND THEY MAKE A LIFETIME MOVIE ABOUT HOW MY HUSBAND CAN NO LONGER LIVE WITHOUT US :)

NHTSA ID Number: 10956121


Incident Date February 3, 2017
Consumer Location CANYON COUNTRY, CA
WHILE DRIVING THE CAR ON THE FREEWAY AND UNDER ACELLERATION THERE IS A HORRIBLE EXHAUST SMELL THAT MAKES MY KIDS AND MYSELF NAUTIOUS. IT ALSO GIVES ME CONSTANT HEADACHES. I DIDN'T REALIZE WHAT WAS HAPPENING UNTIL MY HUSBAND GOT IN THE CAR FOR THE FIRST TIME AND NOTICED THE EXHAUST SMELL

NHTSA ID Number: 10954621

Incident Date June 2, 2016

Consumer Location STRABANE, PA

SEVERAL TIMES WHEN DRIVING TWO OF MY CHILDREN AGES 2 AND 10 COMPLAINED OF A BAD SMELL COMING FROM THE THIRD ROW SEATING. THEY BOTH BECAME STRANGELY ILL, BUT ONLY MY 2YO BEGAN VOMITING. MY 10 TO COMPLAINED OF BEING LIGHT HEADED DURING SEVERAL LONG TRIPS. I NOTICED ON MANY OCCASIONS THAT DURING

HIGH ACCELERATION ANYONE THAT SITS IN THE THIRD ROW COMPLAINS OF STOMACH ACHES AFTER A LENGTHY TIME IN THE VEHICLE. I CHALKED IT UP TO CAR SICKNESS, BUT REMEMBERED THIS ONLY BECAME RELEVANT WHEN LEASING THIS FORD. PLEASE HELP US. I HAVE THREE KIDS AND NO OTHER VEHICLE. THIS ALL STARTED THIS PAST SUMMER.

NHTSA ID Number: 10943721

Incident Date October 3, 2016

Consumer Location MOUNT HOREB, WI

SINCE EARLY OCTOBER 2016, I'VE HAD A NEAR-CONSTANT EXHAUST SMELL, SIMILAR TO WHAT NATURAL GAS OR SULFUR SMELLS LIKE,IN THE CABIN OF MY VEHICLE THAT IS RESULTING IN HEADACHES (LITERALLY) FOR MY ENTIRE FAMILY. DEALERSHIP HAS MADE MULTIPLE ATTEMPTS TO REPAIR AND HAS BEEN UNSUCCESSFUL. THE EXHAUST FUMES ARE COMING INTO THE CABIN WHEN THE ENGINE IS STARTED AND VEHICLE IS PARKED OR MOVING. IN MY ONLINE RESEARCH, I'VE FOUND THAT FORD IS UNDER INVESTIGATION BY NHTSA FOR THIS ISSUE FOR 2010-15 MODELS, BUT I BELIEVE MY 2016 MODEL IS AFFECTED AS WELL.

2017 FORD EXPLORER NHTSA ID Number: 11011969

Incident Date June 1, 2017

Consumer Location RICHMOND, TX

EXHAUST ODOR SMELL, AS SOON AS CAR SPEEDS UP ABOVE THE 40 MPH, IT STARTS SMELLING EXHAUST IN THE CAR. SMELL IS SO STRONG THAT CAUSE HEADACHE. THIS IS POISON CARBON MONOXIDE.

NHTSA ID Number: 11012195

Incident Date November 1, 2016

Consumer Location BAINBRIDGE, GA

ODOR WHICH MAKES ME NAUSEA AND HAVE A HEADACHE

NHTSA ID Number: 11011868

Incident Date July 31, 2017

Consumer Location SHERMAN OAKS, CA

PLAINTIFFS' FIRST AMENDED COMPLAINT  - 16
Case No. 3:19-cv-05886

FORD EXPLORER SPORT 2017 SMELLS OF EXHAUST GAS IN THE DRIVER CABIN. I BOUGHT THE CAR IN MARCH 5, 2017 AND TOOK IT TO DEALER 3/9/17 TO COMPLAIN ABOUT EXHAUST FUMES SMELL WHEN I DROVE ON THE FREEWAY. THEY TOLD ME THEY TESTED IT AND COULD NOT SMELL ANYTHING. THE PROBLEM HAS CONTINUED AND IT HAPPENS ESPECIALLY WHEN I DRIVE ON THE FREEWAY. IN JUNE A WAS GOING TO DRIVE MY CAR FROM LA TO NEW JERSEY. AFTER THREE DAYS OF DRIVING I HAD TO TURN BACK TO LA BECAUSE I GOT DIZZY AND FELT NAUSEOUS EVERY DAY AFTER DRIVING 6 TO 8 HOURS. I SAW LAST NIGHT ON THE NEWS THAT THERE IS A PROBLEM WITH EXHAUST FUMES AND CARBON MONOXIDE AND THAT MADE ME REALIZE THAT I AM AFFECTED BY THAT. I CALLED FORDS HOTLINE EARLIER TODAY. THEY SAID THAT THERE IS A FIX BUT WHEN I TOOK IT TO THE DEALERSHIP THEY TOLD ME THAT APPARENTLY THERE IS NO FIX FOR THE 2017 YET AND I GOT THE ADVISE TO BE CAREFULL AND DRIVE WITH MY WINDOW DOWN. THAT IS NOT THE SOLOUTING YOU WANT AFTER PAYING 55G AND HAVING ONLY 3500MILLES ON THE ODOMETER!

NHTSA ID Number: 11011802

Incident Date July 15, 2017

Consumer Location BROOKLYN, NY

EVERY TIME GAS IS PUSHED AT FULL THROTTLE THERE IS A SMELL OF EEXHAUST IN THE CABIN OF THE CAR , THIS IS A NEW CAR JUST PURCHASED , MY TWO KIDS VOMITED AND DON'T WANNA RIDE IN IT THIS IS NOT A JOKE AT ALL .

NHTSA ID Number: 11010888

Incident Date July 26, 2017

Consumer Location PASADENA, MD

VEHICLE IN MOTION- CARBON MONOXIDE DETECTOR READING OF 45

PPM (PARTS PER MILLION). PASSENGERS COMPLAINING OF HEADACHES, NAUSEA, LIGHTHEADEDNESS WHICH PROMPTED THE USE OF THE METER.

NHTSA ID Number: 10979869

Incident Date April 18, 2017

Consumer Location GREAT RIVER, NY

ON JANUARY 27TH, 2017, MY WIFE AND I LEASED A NEW 2017 FORD EXPLORER. EVERY TIME WE OPERATE THE VEHICLE, WE GET EXTREMELY SICK (SOME SYMPTOMS WE EXPERIENCE ARE SORE THROAT, RUNNING NOSE, HEADACHES, AND NAUSEA THAT LAST HOURS AFTER EXITING THE VEHICLE). THIS OCCURS ABOUT 10-15 MINUTES WHILE RIVING/OPERATING THE VEHICLE. THE HEATING

SYSTEM WAS SET TO 75 DEGREES FAHRENHEIT AND THE WINDOWS WERE CLOSED. AFTER WE FELT SICK WE DID SHUT OFF THE HEATING SYSTEM AND OPEN THE WINDOWS BUT THERE WAS A SLIGHT ODOR IN THE CABIN AND WE STILL FEEL SEVERAL ALIMENTS. DOCTOR APPOINTMENTS HAVE BEEN MADE FOR MYSELF AND MY 6-MONTH- OLD DAUGHTER THAT WAS IN THE VEHICLE (THIS BEING MY MOST SIGNIFICANT CONCERN). FORD MOTOR CORP INSTALLED A NEW EXHAUST SYSTEM, REMOVED THE REAR BUMPER AND RESEALED ANY LEAKS, CHECKED CABIN PRESSURE AND TRIED TO RESEAL ANY CRACKS THAT MAY ALLOW EXHAUST TO RENTER THE CABIN. FORD STATED THAT THE VEHICLE WAS FIXED, AFTER BEING BROUGHT TO THEM FOR THE THIRD TIME (THEY SAID THEY FOUND MORE LEAKS AND RESEALED THEM), BUT REFUSED TO GIVE ME ANY DOCUMENTATION STATING THAT THE VEHICLE IS SAFE FOR MY FAMILY AND MYSELF TO BE IN. THE VEHICLE HAS BEEN IN AND OUT OF SERVICE SEVERAL TIMES, A FORD SERVICE TECHNICIAN LOCATED AT SAYVILLE FORD TEST DROVE THE VEHICLE WITH ME AND CONFIRMED THE SAME AILMENTS. THE VEHICLE WAS PICKED UP FROM SERVICE AFTER FORD STATED IT WAS FIXED FOR A 3RD TIME AND WE WERE STILL GETTING SICK WHEN WE DROVE THE VEHICLE. WE CONTACTED FORD AGAIN AND WE ADVISED THEM OF THE SITUATION FOR A 4TH TIME AND THEIR RESPONSE WAS "BY ITS VERY NATURE, NEW CAR SMELL IS DUE TO PLASTICS AND ADHESIVES IN THE VEHICLE. IT COULD BE AN IRRITANT TO SOME. UNFORTUNATELY, YOU MAY HAVE TO CONSIDER OTHER OPTIONS THAT MAY BE AVAILABLE TO YOU.

39.    According to NHTSA, it initially opened an investigation into "exhaust odors in the vehicle occupant compartment of model year (MY) 2011 to 2015 Ford Explorers" in July 2016. During its investigation, NHTSA's Office of Defects Investigation (ODI) identified hundreds of additional complaints concerning exhaust odor and in July

2017 expanded its inquiry to cover the Class Vehicles.  As of July 31, 2017, NHTSA received 2,700 complaints of exhaust odor in 2011-2017 Ford Explorers, including complaints concerning Police Interceptor Ford Explorers. "The alleged injuries, as affirmatively indicated on the VOQ reports, range from unspecified to loss of consciousness, with the majority indicating nausea, headaches or light headedness," the NHTSA stated. "One police incident alleged a crash with related injuries, and a second police incident reported a physiological injury allegedly from carbon monoxide (CO) exposure. Another reported police incident resulted in a rollover crash event with injuries."(https://www.nhtsa.gov/vehicle/2017/FORD/EXPLORER/SUV/FWD 8/7/2017).

39.    During its investigation, NHTSA sent Ford an Information Request letter, and in response, Ford identified "2400 reports (485 owner complaints, 1254 warranty claims, 606 dealer field reports, 55 legal claims), involving 2,051 unique vehicles, that appear to relate to the exhaust odor issue" in Ford Explorers.  "A number of the Ford reports also discussed health effects similar to the NHTSA complaints, specifically nausea and headaches."

40.    According to NHTSA, "Ford has issued multiple TSBs related to the  exhaust odor issue, and in some cases revised those documents multiple times to provide dealership technicians with procedures to address complaints raised by consumers and police fleets. Concerns over the effectiveness of the procedures have been raised by vehicle owners in some cases."  NHTSA continues to evaluate the effectiveness of Ford's TSBs.

41.    With respect to the Ford Explorer Police Interceptor, NHTSA reports that these vehicles may be "experiencing exhaust manifold cracks, which appear to present a low level of detectability, and may explain the exhaust odor." NHTSA does not indicate whether this same condition is present in the other Ford Explorers subject to its investigation. ( Ford Takes Action For First Responders; Underscores No Issue With Carbon Monoxide  In Regular Explorer, The  Ford Motor Company Technical Service Bulletins (TSB) .

42.    As referenced by NHTSA, Ford has issued TSBs for Ford Explorers that concern the presence of exhaust fumes in the passenger compartment.  Such TSBs, which evidence Defendant's exclusive and superior knowledge regarding the defect in earlier models and which implicate the same problem as present in the Class Vehicles, were issued to its exclusive network of dealerships beginning on or around December 2012.

43.   In December 2012, Ford issued TSB 12-12-4, which provided instructions to Ford dealerships to remedy the presence of exhaust fumes in 2011,2012 and 2013 Ford Explorers.

44.    In July 2014, Ford issued TSB 14-0130, which superseded TSB 12-12-4 and included 2014 and 2015 Ford Explorers.

45.    According  to  TSB 14-0130, "[s]ome  2011-2015  Explorer vehicles may exhibit an exhaust odor in the vehicle with the auxiliary climate control system on. Customers may indicate the odor smells like sulfur."MediaCenter, On July 28, 2017, Ford issued a statement claiming that "holes and unsealed  spaces"  in  the  rear  of  Police  Interceptor

PLAINTIFFS' FIRST AMENDED COMPLAINT  - 20
Case No. 3:19-cv-05886

Ford Explorers may allow exhaust to enter the cabin. (Exhaust Odor in Vehicle, TSB 14-0130) Ford stated, however, that "[d]rivers of regular, non- police Ford Explorers have no reason to be concerned."

https://media.ford.com/content/fordmedia/fna/us/en/news/2017/07/28/police- utility- statement.html (last visited Aug. 7, 2017) ("July 28, 2017 Ford Statement").

46.    TSB 14-0130 did not identify a specific remedy for the presence of exhaust fumes, instead suggesting several distinct modifications/replacements. In particular, TSB 14-0130 suggested the following:

•    Reprograming the HVAC System;

•    Replacing the left side rear air extractor;

•    Inspecting for the presence of drain valves and installing new drain valves;

•    Sealing the rear horizontal sheet metal lap joints and the rear sheet metal overlap flange; and

•    Applying undercoating to the auxiliary air conditioning lines and sealed areas.11

However, on August 2, 2019, Ford Issued yet another TB which acknowledged, at least in part the material defect in the vehicles. Plaintiffs were given this notice:

Ford Motor Company has announced an emission recall notice (19E02) for all Ford Interceptor SUV's built from 2011 through 2018. According to Ford, it may be possible that aggressive law enforcement driving maneuvers can result in an overheated catalytic converter and catalyst degradation. Ford also states that this degradation may result in an illuminated Service Engine

Soon indicator icon and may also cause **elevated exhaust emissions**. In addition, Ford has implemented a Customer Satisfaction Program (19M01) that extends the catalytic converter warranty from 100,000 miles or 6 years to 120,000 miles or 11 years.  The 19E02 recall consists of reprogramming the powertrain control module with improved catalyst protection software and must be completed in order to be covered under the extended warranty.  Ford advises that the recall work can be completed in less than half a day.  Fleet has entered approximately 700 19E02 recall notices into Ford Interceptor SUV electronic vehicle files.  Affected vehicle custodians should receive an immediate recall notice and reminders every six months until the recall work has been completed. Please make an appointment with your local Ford dealership and request an appointment for Emission Recall 19E02.  According to the recall language, you can continue to *safely drive* your vehicle while waiting for an appointment date.

47.    This scattershot approach demonstrates that Ford knew of the defect in earlier model Ford Explorers, but did not know of a specific and effective fix to protect car occupants from exposure to exhaust fumes.  Neither TSB 12-12-4 nor TSB 14-0130 acknowledged the presence of carbon monoxide in the passenger compartment.  It was not until August of 2019, that Ford began to acknowledge outside of lawsuits that there was a CO problem in their vehicles.

48.    Based on NHTSA's report  and upon information and belief, both  TSB 12-12-4 and TSB 14-0130 failed to remedy the defect present in earlier model Ford Explorers. Similarly, upon information and belief,  the suggested modifications/replacements in TSB 12-12-4 and TSB 14-0130 do not sufficiently remedy the Exhaust Fume Defect in the Class Vehicles; the recall of 19E02 does not acknowledge the real issues affecting these vehicles.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

49.     Plaintiffs were never provided with copies of or information about TSB 12-12-4 and TSB 14-0130, and to the extent that Ford has issued subsequent TSBs that include the Class Vehicles, Plaintiffs have never been provided with copies.

50.     Further, upon information and belief, the TSBs were not directly communicated to first responders like Plaintiffs and other police personnel whose daily driver was the class vehicle.  Thus, despite Ford's knowledge of the defect and associated safety hazard, Defendant failed to disclose the defect to  law enforcement officers who were operators of the Class Vehicles, including Plaintiffs and members of the Class, and instead, intentionally concealed the Exhaust Fume Defect.

51.     The TSBs, along with pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made to Defendant's network of exclusive dealers and NHTSA, aggregate warranty data compiled from those dealers, repair order and parts  data  received  from the  dealers,  and  testing  performed  in  response  to consumer complaints, evidences that since as early as 2012, Defendant has had exclusive and superior knowledge regarding the defect in earlier model Ford Explorers – the same  defect present in the Class Vehicles.

52.     Defendant gained its knowledge of the Exhaust Fume Defect through sources not available to Plaintiffs and members of the Class.

PLAINTIFFS' FIRST AMENDED COMPLAINT  - 23
Case No. 3:19-cv-05886

53.    In late 2016, Ford settled a class action litigation, _Sanchez Knutson v. Ford Motor Co_., No. 14-cv-61344-WPD (S.D. Fla.), which alleged a defect identical to the Exhaust Fume Defect – "exhaust and other gases, including dangerous quantities of carbon monoxide may enter the passenger compartments of the vehicles" for 2011-2015 Ford Explorers.

54.    The settlement provided for the following consideration to affected car owners: (1) Notice of a New Exhaust Odor TSB, which was to be issued in 2016 and which provided an updated procedure to address exhaust fumes in the passenger compartment; and (2) Reimbursement of out of pocket expenses related to repairs conducted within or without the warranty period.

55.    Plaintiffs and Class members did not receive any notice or remedy for the Exhaust Fume Defect, despite its clear similarity to the problem in model years 2011-2015.

## V.    TOLLING OF THE STATUE OF LIMITATIONS AND ESTOPPEL

56.    Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of the defect and the omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and members of the Class were  deceived regarding the Class Vehicles and could not reasonably discover the defect or Defendant's deception with respect to the Exhaust Fume Defect.

57.    Plaintiffs and members of the Class did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendant was concealing a defect

and/or that the Class Vehicles contained the defect and corresponding safety hazard.  As

alleged herein, the existence of the defect was material to Plaintiffs and members of the

Class at all relevant times. Within the time period of any applicable statutes of

limitations, Plaintiffs and members of the Class could not have discovered through the

exercise of reasonable diligence that Defendant was concealing the Exhaust Fume Defect.

58.    At all times, Defendant is and was under a continuous duty to disclose to Plaintiffs and

members of the Class the true standard, quality and grade of the Class Vehicles and to

disclose the defect which resulted in the presence of exhaust fumes, including carbon

monoxide, in the passenger compartment.

59.    Defendant knowingly, actively and affirmatively concealed the facts alleged herein.

Plaintiffs and members of the Class reasonably relied on Defendant's knowing, active

and affirmative concealment.

60.    For these reasons, all applicable statutes of limitation have been tolled based  on  the

discovery  rule  and  Defendant's  fraudulent  concealment,  and  Defendant is estopped

from relying on any statutes of limitations in defense of this action.

## VI.    CLASS ACTION ALLEGATIONS

61.    Plaintiffs  bring  this  action  pursuant  to   Fed R. Civ. P. 23

Washington State Class:  All law enforcement officers in the State of Washington who

drove a Class Vehicle (the "State Class").  Classification as a class is appropriate because

PLAINTIFFS' FIRST AMENDED COMPLAINT  - 25
Case No. 3:19-cv-05886

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of section (a) are satisfied, and in addition:

(1)    The prosecution of separate actions by or against individual members of the class would create a risk of:

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest; or

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

62.    Excluded from the Class are Defendant and its parents, subsidiaries and corporate affiliates.  Plaintiffs reserve the right to revise the definition of the Class based upon subsequently discovered information and reserve the right to establish additional sub Class where appropriate.

63.    Common questions of law and fact exist as to all members of the Class and predominate over any issues solely affecting individual members of the Class.  The common and predominating questions of law and fact include, but are not limited to:

•    Whether the Class Vehicles contains a design defect and/or a defect in material, manufacturing and/or workmanship;

•    Whether the defect in the Class Vehicles presents a safety hazard;

•    Whether Defendant knew or should have known that defect in the Class Vehicles presents a safety hazard;

•    Whether Defendant had a duty to disclose defect in the Class Vehicles;

•    Whether Defendant breached its duty to disclose defect in the Class Vehicles;

- Whether Defendant intentionally and knowingly concealed, suppressed and/or omitted material facts concerning the standard, quality or grade of the Class Vehicles and/or the Exhaust Fume Defect;

- Whether Defendant negligently omitted material facts concerning the standard, quality or grade of the Class Vehicles and/or the Exhaust Fume Defect;

- Whether Defendant made material omissions concerning the standard, quality or grade of the Class Vehicles and/or the Exhaust Fume Defect;

- Whether members of the Class would operate a class vehicle if Defendant, at the time of delivery, disclosed the defect;

- Whether Defendant actively concealed material facts from Plaintiff and members of the Class in order to, inter alia, sell more Class Vehicles;

- Whether Defendant breached its express and/or implied warranties to Plaintiffs and members of the Class;

- Whether Defendant violated the Washington State Products Liability Statute RCW 7.72

- Whether Defendant was unjustly enriched by its conduct; and

- Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted.

64.    Plaintiffs' claims are typical of the claims of the Class that Plaintiffs seek to represent.  As alleged herein, Plaintiffs and the Class sustained damages arising out of the same illegal actions and conduct by Defendant.

65.    Plaintiffs are willing and prepared to serve the Class in a representative capacity with all of the obligations and duties material thereto. Plaintiffs will fairly and adequately protect the interests of the Class and has no  interests adverse to or in conflict with the interests of the other members of the Class.

66.    Plaintiffs' interests are co-extensive with and are not antagonistic to those of absent members within the Class.  Plaintiffs will undertake to represent and protect the interests of absent members within the Class and will vigorously prosecute this action.

67.    Plaintiffs have engaged the services of the undersigned counsel., will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Class.

68.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

69    Class action status is warranted under Fed R. Civ. P. 23 because questions of law or fact common to the members of the Class predominate over any questions affecting only

individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

70.    The interest of members within the Class in individually controlling the prosecution of separate actions is theoretical and not practical.   The Class have a high degree of similarity and are cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

71.    The nature of notice to the proposed Class is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by the best notice practicable under the circumstance including, inter alia, email, publication in major newspapers and/or on the internet.

### VII.    CLAIMS FOR RELIEF

### COUNT I  Fraud Fraudulent Concealment

(On behalf of the Class or, alternatively, on behalf of the Named Plaintiffs)

72.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

73.    Plaintiffs bring this count on behalf of themselves and the members of the Class or, alternatively, on behalf of the named Plaintiffs.

PLAINTIFFS' FIRST AMENDED COMPLAINT  - 30
Case No. 3:19-cv-05886

74.    Defendant intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Exhaust Fume Defect installed in the Class Vehicles, which exposes drivers and occupants to noxious gases, fumes and odors and/or an associated safety hazard from same, with the intent that Plaintiffs and members of the Class rely on Defendant's omissions.  As a direct result of Defendant's fraudulent conduct, members of the Class have suffered actual damages.

75.    Defendant knew (at the time of sale or lease and thereafter) that the Class Vehicles contained Exhaust Fume Defect, concealed the defect, and never intended to repair or replace the Exhaust Fume Defect during the warranty periods. To date, Defendant has not provided Plaintiffs or members of the Class with a repair or remedy that will eliminate Exhaust Fume Defect.

76.    Defendant owed a duty to disclose the Exhaust Fume Defect and its corresponding safety hazard to Plaintiffs and members of the Class because Defendant  possessed  superior and  exclusive  knowledge  regarding  the  defect. Rather than disclose the defect, and had a lawful duty to report the defect. 49 CFR 573.6. Defendant intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Exhaust Fume Defect, to sell additional Class Vehicles and avoid the cost of repair or replacement.

§ 573.6 Defect and noncompliance information report.

(a) Each manufacturer shall furnish a report to the NHTSA for each defect in his vehicles or in his items of original or replacement equipment that he or the Administrator determines to be related to motor vehicle safety, and for each noncompliance with a motor vehicle safety standard in such vehicles or items of equipment which either he or the Administrator determines to exist.

77.    The fact that the Exhaust Fume Defect exposes drivers and occupants to dangerous gases including carbon monoxide is material because Plaintiffs and members of the Class had a reasonable expectation that the vehicles would not expose them and other vehicle occupants to such a safety hazard.  No reasonable consumer expects a vehicle to be designed, manufactured and assembled such that exhaust fumes are present in the passenger compartment while driving.

78.    Plaintiffs and members of the Class would not have operated the Class Vehicles but for Defendant's omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Exhaust Fume Defect.

79.    Defendant knew its concealment and suppression of material facts were false and misleading and knew the effect of concealing those material facts. Defendant knew its concealment and suppression of the Exhaust Fume Defect

80.    Defendant acted with malice, oppression and fraud.

81.    Plaintiffs and members of the Class reasonably relied upon Defendant's knowing concealment  and omissions.   As a direct  and proximate result of Defendant's omissions

PLAINTIFFS' FIRST AMENDED COMPLAINT  - 32
Case No. 3:19-cv-05886

and active concealment of material facts regarding the Exhaust Fume Defect and associated safety hazard, Plaintiffs and members of the Class have suffered actual damages in an amount to be determined at trial.

## COUNT II VIOLATION OF WASHINGTON
## CONSUMER PROTECTION ACT RCW 7.72

On Behalf of the Class, or alternatively, on behalf of the Named Plaintiffs

82.  Plaintiffs incorporate and re-allege each preceding paragraph as though fully set forth herein.

83.  Plaintiffs bring this count on behalf of themselves and members of the Class.

84.  Defendant is a product seller as that term is defined in RCW 7.72.020;

85.  The claim is a product liability claim as that claim is defined by RCW 7.72.020(4);

86.  Plaintiffs and the proposed Class are claimants as that term is defined by RCW 7.72.020(5);

87.  Plaintiffs and the proposed Class have suffered harm as that term is defined by RCW 7.72.020(6).

88.  Defendant supplied a product, that being the 2011-2018 Ford Explorer police interceptor vehicle which was not reasonably safe at the time the product left the defendant's control in that the vehicles' exhaust and manifold system were defective and allowed carbon monoxide and other harmful gasses to leak out and intrude into the passenger compartments through the vehicles' HVAC systems as described infra; The Class Vehicles were designed, engineered and manufactured by Ford with design flaws and/or

defective exhaust and/or HVAC Systems that cause the presence of exhaust fumes, including carbon monoxide, in the passenger compartment while the vehicles are in use (the "Exhaust Fume Defect"). By designing, manufacturing, assembling, inspecting, distributing, selling and leasing the Class Vehicles with the Exhaust Fume Defect, Ford rendered the Class Vehicles defective and unsafe for their intended use and purpose.

89. Plaintiffs were issued the defective vehicles for patrol operations and were required to drive the vehicles as part of their daily work assignments.

90. Plaintiffs were injured in that they became sick, disorganized, foggy headed, suffered medical illnesses; heart attack like symptoms, chronic carbon monoxide poisoning, acute carbon monoxide poisoning, fatigue, nausea and other disabling injury as a result of their exposure to the deadly gasses which intruded the passenger compartments of their police vehicles;

91. The unsafe condition of the vehicles was a proximate cause of Plaintiffs' injuries and/or damages.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment against Defendant and in favor of Plaintiffs and the Class, and award the following relief:

- An order certifying this action as a class action pursuant to Fed R.Civ. P. 23 of the, declaring Plaintiffs as the representative of the Class and Plaintiff's counsel as counsel for the Class;

- An order awarding declaratory relief and enjoining Defendant from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

- Appropriate injunctive and equitable relief;

- A declaration that Defendant is financially responsible for all Class notice and the administration of Class relief;

- An order awarding costs, medical and related expenses and economic damages under applicable law, and compensatory damages for economic loss, , and out-of-pocket costs in an amount to be determined at trial;

- An order awarding any applicable statutory and civil penalties;

- An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

- An award of costs, expenses and attorneys' fees as permitted by law;  and

- Such other or further relief as the Court may deem appropriate, just, and equitable.

## IX.    DEMAND FOR JURY TRIAL

Pursuant to local rule Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED this _21st day of January 2020

s/Josephine Townsend

Josephine C. Townsend, WSBA #31965
Attorney for Plaintiffs and the
Proposed Class
211 E. 11th Street Ste 104
Vancouver, WA  98660
360-694-7601
*Josie@jctownsend.com*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Anthony Todaro

anthony.todaro@dlapiper.com

Attorney for Defendant Ford Motor Company

s/Josephine Townsend
Josephine C. Townsend, WSBA #31965
Attorney for Plaintiffs and the
Proposed Class
211 E. 11th Street Ste 104
Vancouver, WA  98660
360-694-7601
*Josie@jctownsend.com*

PLAINTIFFS' FIRST AMENDED COMPLAINT  - 37
Case No. 3:19-cv-05886