UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RANDALL CASHATT, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>FORD MOTOR COMPANY,<br><br>        Defendant. | CASE NO. 19-CV-05886-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE AND STRIKING PLAINTIFFS' CROSS-MOTION TO AMEND COMPLAINT |

    This matter comes before the Court on Defendant Ford Motor Company's Motion to Strike Certain Allegations of Plaintiffs' Third Amended Complaint, Dkt. No. 72, and Plaintiffs' Cross Motion to Amend Complaint, Dkt. No. 74. For the reasons discussed below, the Court grants in part and denies in part Ford's motion and strikes Plaintiffs' cross-motion to amend their complaint.

    The Court also details this case's procedural history to highlight Plaintiffs' continued failure—despite repeated remedial opportunities and admonitions—to adhere to Court orders and to requirements set forth in the Local Civil Rules and Federal Rules of Civil Procedure. As Ford observes in its motion, the Court already cautioned Plaintiffs that it "expects strict adherence" to

1  these rules and would not "be so forgiving" in the future. Dkt. No. 70 at 1–2; Dkt. No. 72 at 1–2.
2  Plaintiffs failed to heed this warning.

## I.    INTRODUCTION

Plaintiffs in this case are Washington State Patrol Troopers who were issued Ford Police Interceptor SUVs (model years 2011-2018) in the course of their employment. Dkt. No. 1-1 at 6. Plaintiffs allege that after receiving their vehicles, they "detected exhaust fumes within the passenger compartment while driving," an issue that the Ford dealership was apparently "unable to eradicate." Dkt. No. 1-1 at 7. They were nonetheless "advised that the vehicles were safe to drive." *Id.* Plaintiffs thereafter continued to notice exhaust fumes in the passenger compartment and, as a result, "suffered headaches, nausea, foggy thinking, and flu like symptoms." *Id.* At least one Plaintiff "suffered permanent neurological damage[.]" *Id.* Ford eventually recalled all Interceptors manufactured between 2011 and 2018 due to, at least according to Plaintiffs, "a defective exhaust and/or Heating, Ventilation, and Air Conditioning system . . . that allow[ed] exhaust odor and gases, including carbon monoxide . . . to enter the passenger compartment of the vehicles while in use." *Id.* at 3.

In August 2019, Plaintiffs initiated a class action against Ford in Clark County Superior Court for fraudulent concealment; negligent misrepresentation; breach of express warranty; breach of implied warranty of merchantability; violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; unjust enrichment; violation of the Washington Consumer Protection Act (the "WCPA"), Wash. Rev. Code § 19.86 *et seq.*; and negligence. Dkt. No. 1-1 at 32–49. Ford timely removed the case to federal district court on diversity grounds and pursuant to the Class Action Fairness Act. Dkt. No. 1 at 3–8; *see* 28 U.S.C. §§ 1332(a)(1), (c)(1), (d)(2); 1441(a); 1446(a)–(b). It then moved to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6).

Dkt. No. 7. Ford ultimately agreed, however, to allow Plaintiffs to file an amended complaint. Dkt. No. 20 at 2.

In their first amended complaint, Plaintiffs reduced their case to just two causes of action: fraudulent concealment and violation of the WCPA. Dkt. No. 21 at 30–34. Although Plaintiffs labeled the second cause of action as one arising under the WCPA, *id.* at 33, their claim is one for violation of the Washington Product Liability Act ("WPLA"), Wash. Rev. Code § 7.72 *et seq*. *See* Dkt. No. 35 at 3 n.1 ("Plaintiffs confusingly style their claim as falling under the Washington Consumer Protection Act, which is codified at RCW 19.86, but then describe it as a products liability action and reference RCW 7.72.020.").

Ford soon moved to strike the class allegations in Plaintiffs' amended complaint. Dkt. No. 22. And it again moved to dismiss Plaintiffs' complaint under Rule 12(b)(6), arguing—among other things—that "the WPLA 'is the exclusive remedy for product liability claims.'" Dkt. No. 23 at 11 (quoting *Macias v. Saberhagen Holdings, Inc.*, 282 P.3d 1069, 1073 (Wash. 2012)). The Court agreed with Ford on both motions. Dkt. No. 35 at 2. As for the preemption issue, the Court recognized that "the WPLA supplants common law claims based on concealment related to a product." *Id.* at 5 (citing *Fagg v. Bartells Asbestos Settlement Tr.*, 339 P.3d 207, 211 (Wash. Ct. App. 2014) and *Potter v. Wilbur-Ellis Co.*, 814 P.2d 670, 673 (Wash. Ct. App. 1991)). And because Plaintiffs' claim "is ultimately based on concealment of a product defect," the Court held that the WPLA preempts their common law fraudulent concealment claim. Dkt. No. 35 at 5–6; *see id.* at 5 ("Plaintiffs allege (ad nauseum) that Ford knew about the defect with its vehicles but omitted/concealed that information from Plaintiffs and others[.]"). The Court then dismissed Plaintiffs' WPLA claim because their allegations were "entirely conclusory and consist[ed] mostly of publicly-available information cribbed from other sources, such as the NHTSA [National Highway Traffic Safety Administration] and Ford itself." *Id.* at 6.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE AND STRIKING PLAINTIFFS' CROSS-MOTION TO AMEND COMPLAINT - 3

As for Plaintiffs' class allegations, the Court found that the proposed class definition was overbroad because it encompassed individuals who drove a 2011-2018 Ford Explorer but sustained no injury. *Id.* at 9–10 ("This means a substantial number of the proposed class members would lack standing to assert a claim[.]"). It also determined that "individualized questions far outstrip[ped] common ones[.]" *Id.* at 12. The Court nonetheless permitted Plaintiffs "one chance to sharpen their class definition and allegations" in an amended complaint. *Id.* at 13.

Plaintiffs thereafter filed a second amended complaint. Dkt. No. 38. Again, Ford moved to strike their class allegations and again the Court granted the motion. Dkt. Nos. 42, 53. Specifically, the Court found that Plaintiffs failed to sufficiently narrow their overbroad class definition and that individualized factual determinations prevailed. Dkt. No. 53 at 3–6. Although the Court struck Plaintiffs' class allegations, their individual WPLA claims remained intact. *Id.* at 6. The Court accordingly gave Plaintiffs until May 15, 2021 to file a third amended complaint. *See* April 28, 2021 Docket Entry.

May 15th came and went. Ford's counsel reached out to Plaintiffs' counsel four days after the amended complaint deadline inquiring as to whether Plaintiffs planned to file anything. Dkt. No. 58 at 4–5. Ford's counsel further indicated that he planned to move to dismiss Trooper Jeffrey Heath's claims against Ford because there were "no allegations about Mr. Heath in the body of the Second Amended Complaint." *Id.* at 5. When Plaintiffs' counsel failed to respond, Ford's counsel sent another email indicating that the motion to dismiss Trooper Heath's claims was "prepared." *Id.* at 4. Ford's counsel asked whether Plaintiffs would "simply stipulate" to dismissal of those claims to "avoid filing the motion." *Id.* Plaintiffs' counsel finally responded by asking Ford's counsel to "hold off" because she planned to work on the case that weekend. *Id.* at 3. Ford's counsel agreed to wait until June 2nd. *Id.* He also offered to consider stipulating to a third amended

1  complaint if Plaintiffs' counsel provided a draft for review as soon as possible. *Id.* Plaintiffs'
2  counsel never responded. *Id.* at 1.

3  On June 3, 2021, Ford moved to dismiss Trooper Heath's claims. Dkt. No. 57. Plaintiffs
4  responded on June 18, 2021 by filing a motion for extension of time to file the third amended
5  complaint—over a month after the deadline for filing a third amended complaint had passed. Dkt.
6  No. 61. The Court denied the motion, Dkt. No. 62, and Plaintiffs then filed a cross-motion to
7  amend their complaint, Dkt. No. 63. There Plaintiffs indicated that they had "no objection to
8  removing language which refers to the class action which was denied by this Court and to add
9  additional facts as they relate to Trooper Heath." *Id.* at 2. Plaintiffs simultaneously filed a "Reply
10 to Defendant Ford Motor Motor [sic] Company Pursuant to Federal Rules 12(B)(6) [sic]," in which
11 they argued that Trooper Heath's injuries had been sufficiently pled and, alternatively, reiterated
12 their request for leave to amend their complaint. Dkt. No. 64 at 6–12. Ford bifurcated its response
13 to Plaintiffs' briefing. It first filed a brief detailing its unsuccessful efforts to cooperate with
14 Plaintiffs' counsel and addressed the arguments raised in Plaintiffs' "reply" brief. Dkt. No. 65 at
15 1–4. Then, in a separate filing, Ford indicated that it did not object to Plaintiffs' cross-motion to
16 amend their complaint by adding allegations specific to Trooper Heath. Dkt. No. 66 at 1. The Court
17 granted Plaintiffs leave to file a third amended complaint in light of Ford's acquiescence. Dkt. No.
18 70 at 1. In doing so, however, the Court was careful to document Plaintiffs' "carelessness" and
19 made clear that it expected "strict adherence to the Local Rules, the Federal Rules of Civil
20 Procedure, and all deadlines." *Id.* at 1–2.

21 Plaintiffs filed a third amended complaint.[1] Dkt. No. 71. The complaint, however, remains
22 riddled with references to "class members" and "class vehicles"—allegations that the Court struck

---

[1] Among other deficiencies, Plaintiffs' complaint erroneously lists the Honorable Richard Jones in the upper-right-

a year ago. *See* Dkt. No. 71 at 1–8, 11–14, 17–19, 21–25, 29, 32, 36–43; Dkt. No. 53; Dkt. No. 72 at 2 (identifying 75 references to class allegations). It likewise erroneously references the WCPA while citing the WPLA. Dkt. No. 71 at 40. Ford highlighted all of this and more in yet another motion to strike. Dkt. No. 72. This time Ford argues that Plaintiffs' complaint violates Federal Rule of Civil Procedure 8(a)(2)'s "short and plain statement" requirement, and asks the Court to strike all redundant, immaterial, and impertinent allegations. *Id.* at 2; *see* Fed. R. Civ. P. 12(f)(2). Specifically, Ford seeks to strike from Plaintiffs' complaint "[a]ny references to class actions, class members, [or] class vehicles"; "[a]ny references to or excerpts from consumer complaints concerning other Explorer vehicles made to the National Highway Traffic Safety Administration ('NHTSA')"; "[a]ny references to an open investigation of Ford Explorers undertaken by NHTSA"; "[a]ny references to purported remedial measures undertaken by Ford with respect to Ford Explorers"; and last, "[a]ny references to the settlement of the *Sanchez-Knutson* consumer class action[.]" Dkt. No. 72 at 2; *see* Dkt. No. 73, Ex. A (highlighted version of third amended complaint identifying portions to be struck).

Plaintiffs responded to Ford's latest motion in another improperly labeled "reply" brief.[2] Dkt. No. 74. According to Plaintiffs, the "purpose" of the third amended complaint "was to address [the] specific personal injury suffered by Jeffrey Heath," and there "was no motion or request to

---

hand corner of the caption. Dkt. No. 71 at 1. Judge Jones has not been assigned to this case since December 2021. *See* December 13, 2021 Minute Order (reassigning case to Judge Tana Lin). Plaintiffs also list the cause number as 19-CV-05886-*MLP*, but Magistrate Judge Michelle Peterson has not been assigned to this case since October 2019. *See* Dkt. No. 13 (reassigning case to Judge Ronald Leighton).

[2] This is not the only problem with Plaintiffs' response brief. The caption of this brief lists Antonio Olivas as a named Plaintiff. Dkt. No. 74 at 1. Plaintiffs have listed Olivas in the caption of at least one other brief. *See* Dkt. No. 64 at 1. But Mr. Olivas has not been listed in the caption of any complaint. *See* Dkt. No. 1-1 at 2; Dkt. No. 21 at 1; Dkt. No. 38 at 1; Dkt. No. 71 at 1. Nor does Mr. Olivas appear in the factual allegations of those complaints. The Court further notes that, as with all of Plaintiffs' filings, their latest brief lists the wrong cause number for this case. This time Plaintiffs use 19-CV-05886-*RBL*. Dkt. No. 74 at 1. Judge Leighton has not been assigned to this case since August 2020, when he retired from the federal bench. Dkt. No. 51. And last, as discussed in further detail below, Plaintiffs improperly combine their "reply" with a cross-motion to amend their complaint. Dkt. No. 74 at 1, 5.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE AND STRIKING PLAINTIFFS' CROSS-MOTION TO AMEND COMPLAINT - 6

modify the third amended complaint . . . as to any class action language." *Id.* at 1–2; s*ee also id.* at 2–3 (contending that "[t]here was no order to remove class allegations in the Court's order" and claiming that "no other changes could be made" to the third amended complaint because it "was drafted only to address [the] details of Trooper Heath's injuries in more detail"); *id.* at 3 ("There was never any motion, discussion or objection to the third amended complaint as to the remaining [class action] language, and Plaintiff[s] could not change the stipulated amended complaint as approved by the Defendant.").[3] Despite all this, Plaintiffs agree that their complaint needs to be "clean[ed] up." *Id.* at 4. The precise extent of this "clean up," however, remains in dispute. *Id.* Plaintiffs have accordingly cross-moved to file a fourth amended complaint adopting some—but not all—of Ford's suggestions. *Compare* Dkt. No. 73, Ex. A, *with* Dkt. No. 74 at 9–54 (Ex. A).[4]

Ford urges the Court to deny Plaintiffs' cross-motion and strike all references to (1) the NHTSA investigation of Ford Explorers, (2) Ford's Technical Service Bulletins ("TSBs"), and (3) the *Sanchez-Knutson* class action settlement in Florida. Dkt. No. 75 at 4; *see Sanchez-Knutson v. Ford Motor Co.*, Case No. 14-61344-CIV (S.D. Fla.). Ford contends that these portions of its motion to strike are the only issues remaining for the Court's resolution. Dkt. No. 75 at 4. Last, Ford asks the Court to require Plaintiffs to file a fourth amended complaint "that complies with Rule 8 and the Court's Order[.]" *Id.* at 5. And if Plaintiffs' fourth amended complaint "violate[s] the Court's orders and applicable rules," Ford suggests that the Court order Plaintiffs to show cause why their action should not be dismissed with prejudice. *Id.*; *accord* Dkt. No. 72 at 2–3.

---

[3] These assertions are disingenuous at best. Although Ford's latest motion to dismiss challenged the lack of factual allegations supporting Trooper Heath's WPLA claim in Plaintiffs' second amended complaint, Plaintiffs ignore the original purpose behind filing a third amended complaint: to omit class allegations. *See* Dkt. No. 53 at 6; April 28, 2021 Docket Entry. The deficiencies relating to Trooper Heath were an additional issue that Ford identified *after* the Court's May 15, 2021 deadline for filing a third amended complaint had passed. Furthermore, in discussing its motion to dismiss Trooper Heath, Ford's counsel reminded Plaintiffs' counsel that a third amended complaint was necessary to remove all class allegations. *See* Dkt. No. 58 at 5.

[4] Ford indicates that Plaintiffs have since agreed to remove two additional class allegations from their complaint, along with the erroneous reference to the WCPA. Dkt. No. 75 at 3; *see* Dkt. No. 76 at 5.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE AND STRIKING PLAINTIFFS' CROSS-MOTION TO AMEND COMPLAINT - 7

## II. DISCUSSION

### A. Standard

The Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a motion to strike "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (cleaned up). "The decision to grant or deny a motion to strike is vested in the trial judge's sound discretion." *SunTrust Banks, Inc. v. Be Yachts, LLC*, __ F. Supp. 3d __, 2020 WL 2131201, at *6 (W.D. Wash. May 5, 2020).

Motions to strike are "viewed with disfavor" and "infrequently granted," *Forza v. Quick Collect, Inc.*, No. C21-1645-JCC, 2022 WL 179236, at *1 (W.D. Wash. Jan. 20, 2022), unless "the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and . . . their presence in the pleading . . . will be prejudicial to the moving party," or they "are pleaded with so little detail that they fail to provide sufficient notice to the opposing party," 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380 (3d ed.). The Court will therefore deny Ford's motion to strike "if there is any doubt whether the allegations in the pleadings might be relevant in the action." *Luken v. Christensen Grp. Inc.*, No. C16-5214-RBL, 2016 WL 5920092, at *2 (W.D. Wash. Oct. 11, 2016).

### B. The Challenged Allegations

Ford contends that Plaintiffs' allegations about the NHTSA investigation, Ford's TSBs, and the *Sanchez-Knutson* settlement are unnecessary to plead a violation of the WPLA, and are therefore the kind of immaterial, impertinent, and redundant allegations that the Court should strike. Dkt. No. 72 at 8. In support of this argument, Ford points to Rule 8's pleading requirements and cites a fleet of Ninth Circuit cases affirming dismissal of complaints that failed to adhere to

this standard. *Id.* at 7. Plaintiffs' complaint is, in Ford's view, "more than sufficient" to put it on notice of their WPLA claim without the challenged allegations. *Id.* at 8; Dkt. No. 75 at 5.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). And every allegation in the complaint "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). As Ford notes, the purpose of the complaint is to give the defendant "fair notice of the factual basis of the claim and of the basis for the court's jurisdiction," *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 841 (9th Cir. 2007), not "to inform the opposing party of every fact underlying the plaintiff's claims," *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1278 (W.D. Wash. 2007) ("The proper time for such detailed revelation is discovery."). The Court thus "has ample remedial authority to relieve a defendant of the burden of responding to a complaint with excessive factual detail," including "simply strik[ing] the surplusage" from the complaint. *Hearns v. San Bernardino Police Dep't.*, 530 F.3d 1124, 1132 (9th Cir. 2008).

But the cases on which Ford relies involve complaints that are a far cry from the one at hand. Dkt. No. 72 at 7; *see, e.g.*, *McHenry v. Renne*, 84 F.3d 1172, 1174, 1177 (9th Cir. 1996) (complaint contained "a single sentence thirty lines long" consisting "largely of immaterial background information," failed to specify which defendants were responsible for which wrongs, and was "argumentative, prolix, replete with redundancy, and largely irrelevant"); *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981) (amended complaint "was 23 pages long with 24 pages of addenda, named additional defendants without leave of court," and was "verbose, confusing and conclusory"). Again, the controlling inquiry is whether the challenged allegations are redundant, immaterial, or impertinent. *See Fallon v. U.S. Gov't*, No. S-06-1438-DFL-GGH-PS, 2007 WL 707531, at *2 (W.D. Wash. Mar. 6, 2007) ("When a complaint fails to comply with the requirements of Rule 8(a), the district court [may] . . . strike those parts of the complaint that

are redundant or immaterial."). Plaintiffs' allegations about the NHTSA investigation, Ford's TSBs, and the *Sanchez-Knutson* settlement are not redundant because they appear only once in the complaint and are not "needlessly repetitive." *See* Dkt. No. 71 at 29–38, ¶¶ 52–70; *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002); *Whittlestone*, 618 F.3d at 974 (allegation was not redundant because it did not "appear anywhere else in the complaint").

Nor can the Court say that the NHTSA investigation, Ford's corresponding TSBs, or the *Sanchez-Knutson* litigation are immaterial or impertinent. Immaterial matter "has no essential or important relationship to the claim for relief," while impertinent matter "consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (cleaned up), *reversed on other grounds*, 510 U.S. 517 (1994). The Court must view the challenged allegations in the light most favorable to Plaintiffs, *Lister v. Hyatt Corp.*, No. C18-0961JLR, 2019 WL 5190893, at *3 (W.D. Wash. Oct. 15, 2019), and here finds that those allegations are sufficiently relevant to Plaintiffs' WPLA claim, *see Luken*, 2016 WL 5920092, at *2.

That the NHTSA investigated—and Ford issued TSBs related to—an exhaust fume defect in various Explorer models (including Police Interceptors) manufactured between 2011 and 2018 is relevant to whether Plaintiffs' vehicles contained that defect or whether the issue put Ford on notice that related vehicles had, or may have had, the same defect. *See Whittlestone*, 618 F.3d at 974 (allegation was neither immaterial nor impertinent because it "relate[d] directly to the plaintiff's underlying claim for relief"). Plaintiffs' allegations that the 2011-2015 Ford Explorers at issue in the *Sanchez-Knutson* litigation "contain similar defects" as Plaintiffs' vehicles because they "share similarities in their design," even though they are "different platforms," Dkt. No. 71 at 38, are relevant for the same reason.

1     These allegations, if true, could show that Ford knew or reasonably should have known
2  about the defect, yet failed to issue sufficient warnings. *See* Wash. Rev. Code § 7.72.030(1)(c);
3  Dkt. No. 71 at 36, 38. At minimum, they contextualize Plaintiffs' claim and the alleged exhaust
4  defect specific to Police Interceptors within Ford's broader investigation into similar exhaust
5  defects across multiple Explorer models manufactured between 2011 and 2018. *See Hearns*, 530
6  F.3d at 1132 (although complaint included "excessive detail," this "overview was relevant to
7  Plaintiff's causes of action," and the complaint was otherwise "intelligible and clearly delineate[d]
8  the claims and the Defendants against whom the claims [were] made").

9     Also critical here is Ford's failure to explain why these allegations are immaterial or
10 impertinent beyond its unadorned contention that they are unnecessary to place it on notice of
11 Plaintiffs' claim. Nor does Ford articulate how striking these allegations would avoid needless
12 expense or streamline this case. *See* Dkt. No. 72 at 8; Dkt. No. 75 at 4–5. This precludes the Court
13 from striking the allegations. *See Forza*, 2022 WL 179236, at * 1 (denying motion to strike
14 portions of complaint because defendant "provided no analysis demonstrating why the paragraphs
15 it move[d] to strike [were] immaterial and impertinent" and did not "sho[w] how striking the
16 identified paragraphs would avoid unnecessary expenditure or streamline litigation"). True,
17 Plaintiffs' complaint is not a model of excellence, and some of the details contained therein may
18 ultimately prove to be irrelevant. But the purpose of Rule 12(f) is not to micromanage pleadings,
19 *see Lister*, 2019 WL 5190893, at *9, and "manifestations of bad judgment in drafting pleadings"
20 likewise "fall short of the threshold that Rule 12(f) contemplates," *Luken*, 2016 WL 5920092, at
21 *2. *See also McBurney v. Lowe's Home Ctrs., LLC*, No. 13-CV-00540-ELJ-CWD, 2014 WL
22 2993087, at *3 (D. Idaho Jul. 2, 2014) (denying motion to strike because it would have done "little
23 more than tidy up the pleadings").

24

1       **C.**      **Plaintiffs' Cross-Motion to Amend Complaint**

2       Plaintiffs improperly buried their cross-motion to amend their complaint in their response brief and assigned it the same noting date as Ford's motion to strike. Dkt. No. 74 at 1, 5. It should have been filed separately and noted for consideration no earlier than April 15th. *See* LCR 7(b)(1), (d)(3), (k); *Travelers Indem. Co. of Am. v. Dodson-Duus, LLC*, No. C12-5625-BHS, 2013 WL 4498694, at *5 (W.D. Wash. Aug. 21, 2013) (inserting a request for leave to amend in a response to a motion to strike "is an improper request for affirmative relief in a response brief."). The Court will not tolerate Plaintiffs' continued disregard for applicable rules. The Court accordingly strikes the cross-motion and declines to consider Plaintiffs' improper request for relief. *See Crawford v. JP Morgan Chase NA*, 983 F. Supp. 2d 1264, 1267–68 (W.D. Wash. 2013); Dkt. No. 74 at 5–6, 8–54.

### III.    CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Ford's Motion to Strike and STRIKES Plaintiffs' improper Cross-Motion to Amend Complaint.

Plaintiffs shall file a fourth amended complaint within 14 days of this Order. This amended complaint shall both comply with the Court's Order and incorporate the parties' agreed-upon changes, meaning that it must omit all class allegations and wholesale reproductions of consumer complaints to the NHTSA. *See* Dkt. No. 75 at 2–3.

Repeatedly correcting the same deficiencies across four generations of Plaintiffs' complaint incurs unnecessary attorneys' fees and wastes valuable Court time. Future deficiencies, including but not limited to violations of this Court's Orders or applicable rules, will result in sanctions. Counsel for Plaintiffs shall provide a copy of this Order to her clients.

Dated this 10th day of May, 2022.

*Lauren King*
Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE AND STRIKING PLAINTIFFS' CROSS-MOTION TO AMEND COMPLAINT - 13